# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS
# AT KANSAS CITY

| | |
|---|---|
| JON C. HANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 2:22-cv-2349 |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| DIGITAL MEDIA SOLUTIONS, LLC, | ) |
| | ) |
| Serve at: | ) |
| 4800 140th Avenue N, Suite 101 | ) |
| Clearwater, Florida 33762 | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

COMES NOW Plaintiff Jon C. Hanson, through his counsel of record, and for his Complaint against Defendant Digital Media Solutions, LLC, states:

### BACKGROUND, PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Jon C. Hanson ("Plaintiff" or "Hanson"), brings this case to protect his privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2. Hanson is a retired member of the United States Air Force, in which he served nearly twenty-four years. Hanson was deployed nearly a dozen times overseas and proudly fought for our country.

3. Hanson is now fighting a different battle – getting telemarketers like Digital Media Solutions, LLC ("DMS"), to stop incessantly calling his phone despite the fact Hanson registered his phone number on the National Do-Not-Call Registry.

4. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The TCPA also affords special protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

6. From January 2022 until August 2022, approximately 32.6 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Sept. 1, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against

telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

7. Hanson is an individual who at all times material to this Complaint resided in Johnson County, Kansas.

8. Hanson is the owner of a phone. His phone number is 580-XXX-5594.

9. Hanson registered his phone number on the National Do-Not-Call Registry on or about February 28, 2010.

10. Hanson's phone number is a personal phone number and is not a business line.

11. The monthly bill associated with Hanson's phone number is issued in Hanson's name.

12. Hanson pays his phone bill individually, and not through a business.

13. DMS is a Delaware corporation that is headquartered in the State of Florida. DMS has been in good standing to transact business at all times relevant to this Complaint.

14. DMS transacts business in the State of Kansas and throughout the United States.

15. DMS describes itself as a "leading provider of technology-enabled digital performing advertising solutions connecting consumers and advertisers."

16. Part of DMS's advertising takes placed in the form of telemarketing.

17. At least one of DMS's 10-K forms filed with the SEC states that DMS "conduct[s] marketing activities, directly and directly, via telephone . . . ."

18. Many of DMS's clients are companies who want to provide consumers with mortgages or refinancing mortgage options.

19. In a SEC filing, DMS states that it "operates as a performance marketing engine for companies across numerous industries, including consumer finance (mortgage)."

20. In another SEC filing, DMS is represented to have a client who is "a top 3 U.S. mortgage lender."

21. Further highlighting DMS's interest in marketing mortgage products, in 2017 DMS "acquired a company engaged in the generation of . . . mortgage leads." DMS represents that this acquisition allowed it to "reach into the . . . lending business via [the acquired company's] mortgage acquisition business."

22. DMS promotes on its website various mortgage brands that have successfully implemented DMS's marketing strategies.

23. DMS markets mortgage lending services, in part, through placing telephone calls to consumers' phones.

24. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 as this case presents a federal question under the TCPA.

25. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.00.

26. Venus is proper in this Court under 28 U.S.C. § 1391 as a substantial part of the events giving Hanson's claims occurred within this judicial district.

## DMS' AGGRESSIVE MARKETING TACTICS

27. DMS aggressively marketed mortgage lending services by placing telephone calls to consumers' phones during a favorable housing market in 2021 and 2022.

28. Hanson did not provide his phone number to be called by DMS.

29. Hanson has no prior business relationship with DMS.

30. Hanson never inquired of DMS about any of its services before or at the time he received the calls at issue.

31. Hanson did not grant DMS consent to be called on his phone.

32. Hanson was not in the market for any mortgage-related products or services in 2021 in 2022.

33. Despite never granting consent to DMS or anyone acting on his behalf to call his phone, and not being in the market for mortgage services, Hanson began receiving calls on his phone from DMS or someone acting on its behalf concerning

mortgage services.

34. So as to entice Hanson to answer the calls, DMS or someone acting on its behalf, would often "spoof" the numbers to appear on Hanson's caller ID to show the same area code as Hanson.

35. On information and belief, between March 2021 and present Hanson received at least three hundred calls from DMS or someone working on its behalf concerning mortgage services.

36. On information and belief, the purpose of all of these calls was to sell Hanson mortgage services.

37. The persons calling Hanson would often begin the calls and identify generic names, including, but not limited to: "US Mortgage," "Mortgage Lending Solutions," "Mortgage Saving Center," "US Mortgage Network," "Mortgage Solutions."

38. Oftentimes the callers would specifically reference Hanson's address in Kansas in regard to the offering of mortgage services.

39. Hanson told the DMS representatives calling that his number dozens of times that his phone number was registered on the National Do Not Call Registry, yet DMS's representatives continued to bombard and harass Hanson with telemarketing calls regarding mortgage services.

40. DMS's conduct of calling Hanson hundreds of times violated Hanson's

privacy rights as he was subjected to annoying and harassing calls.

41. DMS's conduct of calling Hanson hundreds of times calls intruded upon Hanson's right to be left alone, and his interest of seclusion.

42. Notably, Hanson is not the only consumer who has received relentless telemarketing calls from or on behalf of DMS. The Better Business Bureau website for DMS is replete with complaints about DMS' telemarketing practices.

43. On January 7, 2021, a consumer made the following complaint to the BBB about DMS' telemarketing practices:

> ". . . I am on the DNC[.] Digital Media Solutions have sent unwanted text to my phone multiple times. They have violated the TCPA over and over again[.] [T]hese text[s] are unwanted . . . ."

44. On May 27, 2021, a consumer made the following complaint to the BBB about DMS' telemarketing practices:

> "I keep getting harassing automated phone calls daily from this company under [the generic name] Degree Source. I have blocked no less than five number and the calls still keep coming. . . ."

45. On July 17, 2020, a consumer made the following complaint to the BBB about DMS' telemarketing practices:

> "[DMS] [c]ontacted me on my cell phone via text message, even though my phone is on the National Do Not Call Registry. . . . I never agreed to opt-in this business's messaging service, and on top of that my phone number is on the National Do Not Call Registry. They shouldn't have contacted me, and have broken the law in doing so."

46. On information and belief, DMS continues to call Hanson despite the fact his phone number is registered on the National Do Not Call Registry. It is reasonable to expect that DMS will continue to make such calls absent this lawsuit.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (National Do-Not-Call Registry Violations)**

47. Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

48. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

49. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

50. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

51. In addition, the TCPA allows the Court to enjoin DMS' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

52. By making calls to Hanson's phone number, which was registered on the National Do Not Call Registry, DMS violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

53. DMS knew or should have known that Hanson's phone number was registered on the National Do Not Call Registry.

54. DMS willfully violated the TCPA when placing the calls to Hanson's phone.

55. Hanson is entitled to damages of $500.00 per violation for each call made by DMS that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that DMS willfully violated the TCPA.

**Count II - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (Internal Do Not Call List Violations)**

56. Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

57. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

58. The regulations prescribed under Section 227(c) require companies like DMS, who engage in telemarketing to institute "procedures for maintaining a list of

9

persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

59. These procedures must meet several minimum standards, including, but not limited to:

(1) *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party

with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

60. DMS failed to institute these minimum standards by repeatedly calling Hanson after he repeatedly advised the DMS representatives that his number was registered on the National Do Not Call Registry.

61. DMS failed to institute these minimum standards by calling Hanson and not disclosing to Hanson the name of the company calling or the phone number at which the representatives calling Hanson could be contacted.

62. Instead, DMS' representatives used generic mortgage business names and spoofed telephone numbers when contacting Hanson.

63. In addition, the TCPA allows the Court to enjoin DMS' violations of the TCPA's regulations prohibiting calls to Hanson's phone number, which should have been placed on DMS' internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

64. By placing calls to Hanson's phone after his phone number should have been placed on DMS' internal do not call list, DMS violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c) and the TCPA's corresponding regulations.

65. DMS knew or should have known that Hanson did not wish to be called as he repeatedly advised DMS representatives that his phone number was listed on the National Do Not Call Registry.

66. Hanson is entitled to damages of $500.00 per violation for each call made by DMS that violates the TCPA and up to $1,500.00 per violation if the Court finds that DMS willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Jon C. Hanson requests that the Court enter judgment against Defendant Digital Media Solutions, LLC in excess of $75,000.00 for all damages available to him under the TCPA, for his court costs and to grant any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a jury trial in this case in Kansas City, Kansas.

Dated:  September 1, 2022                Respectfully submitted,

                                         BUTSCH ROBERTS & ASSOCIATES LLC


                                         */s/Christopher E. Roberts*
                                         Christopher E. Roberts KS#24528
                                         231 S. Bemiston Avenue, Suite 260
                                         Clayton, Missouri 63105
                                         Telephone: (314) 863-5700
                                         Facsimile: (314) 863-5711
                                         CRoberts@butschroberts.com

                                         *Attorney for Plaintiff*
                                         *Jon C. Hanson*